UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---

Z.H., individually and on behalf of
Z.H., a child with a disability,

                Plaintiff,

– against –

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                Defendant.

**OPINION & ORDER**

23-cv-3081 (ER)

RAMOS, D.J.:

    Z.H., the parent of Z.H., a minor with a disability, brings this action pursuant to the Individuals with Disabilities Education Act ("IDEA") to secure attorneys' fees and costs following an impartial hearing officer's ("IHO") decision in her favor. Before the Court is Plaintiff's motion for attorneys' fees and costs for work performed by her attorneys, the Cuddy Law Firm, PLLC (the "Firm"). For the reasons set forth below, the motion is GRANTED, subject to the modifications described herein.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

    A.     **Underlying Administrative Hearing**

    Z.H. was born in 2001 and is diagnosed with Asperger's disorder, pervasive developmental disorder, ADHD, hyperactive type, mood disorder, asthma, and Ehler's-Danlos syndrome. Docs. 24-21 at 1; 24-22 at 3. She was classified as a student with "other health impairment" by the New York City Department of Education's Committee on Special Education. Doc. 1 ¶ 9. On March 18, 2021, Plaintiff filed a due process complaint and requested a due process hearing pursuant to the IDEA. *Id.* ¶ 10; Doc. 24-21. The complaint alleged that the DOE had denied Z.H. a free appropriate public education ("FAPE") as is required by the IDEA, during the 2020–2021 school year. Doc. 24-21 at 3. Plaintiff requested relief including: funding for an independent neuropsychological evaluation at a rate of $5,500; funding for an independent vocational assessment at a rate

of $1,200; funding for transportation costs associated with the performance of both independent evaluations; an Individualized Education Program ("IEP") to recommend appropriate programming for the school year; and extended eligibility to appropriately transition Z.H. from public education to adult life. Doc. 1 ¶ 13. On July 16, 2021, the Firm filed a complaint with the New York State Commissioner of Education in which it successfully argued that the DOE had failed to appoint an IHO within the timeframe mandated by law.[1] Doc. 25 at 3. Ultimately, the DOE appointed an IHO on December 28, 2021. *Id.*; Doc. 24 ¶ 38.

The DOE agreed to fund five hundred hours of Special Education Teacher Support Services not to exceed a rate of $140.00 per hour. Doc. 1 ¶ 16. The IHO held an administrative due process hearing to resolve the remaining disputed issues on February 11, 2022. *Id.* ¶ 17. The DOE did not make any opening statements, enter any evidence, or call any witnesses. *Id.* Rather, it indicated for the first time at the hearing that it would not defend the case. Doc. 24 ¶ 45. The Firm made an opening statement and entered ten exhibits into the record, including two affidavits and the direct testimony of two witnesses. Doc. 1 ¶ 18.[2] The hearing lasted just over 24 minutes. Doc. 34 at 9.

On March 6, 2022, the IHO issued a Finding of Fact and Decision ("FOFD"). Doc. 24-22. The FOFD found that the DOE had failed to provide a FAPE to Z.H. for the school year at issue and ordered the DOE to fund a neuropsychological evaluation from a provider of Plaintiff's choice not to exceed $6,000, to fund a vocational assessment by a

---

[1] The DOE's regulations state that the appointment of an IHO must be initiated immediately, but no later than two business days after receipt by the school district of the due process complaint notice or mailing of the due process complaint notice to the parent. Doc 24-23 at 2. The DOE had acknowledged receipt of Plaintiff's due process complaint on March 18, 2021, the same day it was filed. *Id.*

[2] In the Declaration of Andrew Cuddy attached to the complaint, the Firm submits that it entered twelve documentary exhibits into the record at the hearing, including the affidavits of three witnesses. Doc. 24 ¶ 44. In the DOE's memorandum in opposition to the instant motion, it submits that the Firm entered twelve documentary exhibits including two witness affidavits, but no live testimony. Doc. 34 at 9. The factual discrepancy between the complaint, the declaration, and the memorandum does not affect the Court's analysis.

provider of Plaintiff's choice, and to hold a Committee on Special Education meeting within two weeks of the completion of the above-referenced evaluations. Doc. 1 ¶ 19.

On August 12, 2022, Plaintiff submitted an attorneys' fee demand of $30,875.21 to the DOE for the underlying administrative proceeding. *Id.* ¶ 20; Doc. 30 ¶ 10. In March of 2023, the DOE made a "nominal" settlement offer to the Firm, which was rejected. Doc. 25 at 5.

### B. Action to Recover Attorneys' Fees in Federal Court

Plaintiff filed this complaint on April 13, 2023 in order to compel the DOE to pay reasonable attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3). Doc. 1. In July 2023, the DOE provided the Firm with the first settlement offer for the combined administrative and federal actions. Doc. 23 ¶ 14. The parties exchanged counteroffers over the next few months but were unable to reach a mutually agreeable settlement amount. *Id.* ¶ 15. On October 3, 2023, the DOE provided the Firm with a written offer of settlement pursuant to 20 U.S.C. §1415(i)(3). *Id.* ¶ 16. The settlement offer was for $20,001.00, roughly 40% less than the Firm's request of $33,300.76. *See* Doc. 32-1 at 1.

The DOE answered the complaint on October 17, 2023. Doc. 12. On January 19, 2024, Plaintiff filed the instant motion for attorneys' fees. Doc. 19. The DOE does not dispute that, based on the findings of the IHO, Plaintiff was the prevailing party in the administrative proceeding and is entitled to attorneys' fees and costs. Doc. 34 at 1. However, the DOE argues that the hourly rates sought, and the number of hours billed are unreasonable. *Id.* at 5. After discretionary reductions, the Cuddy Law Firm has billed 93.7 hours in connection with the underlying administrative proceedings, as well as 22.6 hours in connection with this federal action, resulting in a combined $44,325.25 in overall fees and costs. Docs. 24-19; 24-20; 34 at 1.

## II.   LEGAL STANDARD

"In any action or proceeding brought under [§ 1415], the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the

3

parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). "A plaintiff prevails when actual relief on the merits of [their] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *K.L. v. Warwick Valley Cent. Sch. Dist.*, 584 F. App'x 17, 18 (2d Cir. 2014) (internal citation and quotation marks omitted).

"Reasonable attorneys' fees under the IDEA are calculated using the lodestar method, whereby an attorney fee award is derived by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Streck v. Bd. of Educ.*, 408 F. App'x 411, 415–16 (2d Cir. 2010) (citations and quotation marks omitted). In determining whether an hourly rate is reasonable, courts primarily consider the prevailing market rates in the community for comparable legal services. *See* § 1415(i)(3)(C) (providing that attorneys' fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished"). The prevailing market rate has been characterized as "the rate a paying client would be willing to pay ... bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2007). Courts also consider the 12 factors discussed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

4

*Lilly v. City of New York*, 934 F.3d 222, 228 (2d Cir. 2019). Because "the determination of fees should not result in a second major litigation," *Fox v. Vice*, 563 U.S. 826, 838 (2011), courts may consider the *Johnson* factors holistically rather than applying each factor individually to the facts of the case. *V.W. v. New York City Dep't of Educ.*, No. 20 Civ. 2376 (RA), 2022 WL 37052, at *3 (S.D.N.Y. Jan. 4, 2022) (internal citation omitted). "A district court need not recite and make separate findings as to all twelve Johnson factors, provided that it takes each into account in setting the attorneys' fee award." *H.A. v. New York City Dep't of Educ.*, No. 20 Civ. 10785 (PAE), 2022 WL 580772, at *8 (S.D.N.Y. Feb. 25, 2022) (quoting *E.F. ex rel. N.R. v. New York City Dep't of Educ.*, No. 11 Civ. 5243 (GBD) (FM), 2014 WL 1092847, at *3 (S.D.N.Y. Mar. 17, 2014)).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Henlsey v. Eckerhart*, 461 U.S. 424, 437 (1983). The Second Circuit has observed that "[r]ecycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under [§ 1415] and compensation available in the marketplace," which would "undermine[ ] [the statute's] central purpose of attracting competent counsel to public interest litigation." *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005). Accordingly, while a court may consider rates awarded in prior similar cases and its "familiarity with the rates prevailing in the district," it should also "evaluat[e] ... [the] evidence proffered by the parties." *Id.*

### III.   DISCUSSION

#### A.   Reasonable Rate

The Firm seeks a total of $44,325.25 in overall fees and costs. Doc. 34 at 1. This figure includes a total of $33,300.76 for the underlying administrative proceeding and $11,024.50 for the instant federal action. *Id.* The Firm requests a rate of $550 per hour

5

for attorneys Andrew Cuddy and Michael Cuddy; [3] $450 per hour for attorney Kevin Mendillo; $425 per hour for attorney Kenneth Bush; $375 per hour for attorneys Britton Bouchard and John Cuddy; $425 per hour for attorney Justin Coretti; and $225 for paralegals Allyson Green, Cailin O'Donnell, ChinaAnn Reeve, and Shobna Cuddy.[4] Docs. 24-19; 24-20.

In opposition, the DOE asserts that the awards requested here significantly exceed prevailing rates for similar cases, and cites to various similar IDEA cases where courts in this District have awarded hourly rates below those requested by the Firm. The DOE argues that the rates should be set no higher than $400 per hour for A. Cuddy and M. Cuddy, $310 per hour for Mendillo, $300 per hour for Coretti, $215 per hour for Bouchard and J. Cuddy, and $100 per hour for all paralegal work. Doc. 34 at 3–4.

The determination of appropriate rates for the Firm's attorneys "is well trodden ground in this District." *K.O. v. New York City Dep't of Educ.*, No. 20 Civ. 10277 (LJL), 2022 WL 1689760, at *9 (S.D.N.Y. May 26, 2022). The Cuddy Law Firm has brought dozens of federal fees cases in this District since 2018, litigating the rates they assert they are entitled to charge. *See* Doc. 33 at 3 (listing 33 cases the Firm brought from January 2020 to May 2023). The Second Circuit recently issued a decision affirming fifteen decisions by judges of this District reducing fees and costs for the Firm in IDEA cases. *See H.C. v. New York City Dep't of Educ.*, 71 F.4th 120 (2d Cir. 2023). The rates awarded to the Firm have varied depending on the facts of each case.

For A. Cuddy, the president and managing attorney of the Firm, the hourly rate determined to be reasonable in 2023 and 2024 has ranged from $375 an hour to $425 an hour. *See, e.g., F.N. v. New York City Dep't of Educ.*, No. 1:21-cv-11177-MKV, 2024

---

[3] The Firm also requests 2023 rates of $600 per hour and $500 per hour for Andrew Cuddy and Kevin Mendillo, respectively, for their work on the federal action. Doc. 24-20.

[4] The Firm also requests a rate of $225 per hour for Kevin Mendillo's paralegal work on the federal action. Doc. 24-20.

6

WL 1348637, at *8 (S.D.N.Y. Mar. 29, 2024) (awarding $375 per hour); *D.S. v. New York City Dep't of Educ.*, No. 22-CV-10641 (GHW) (RFT), 2024 WL 2159785, at *7 (S.D.N.Y. Apr. 29, 2024) (awarding $400 per hour); *V.W. v. New York City Dep't of Educ.*, 21 Civ. 6495 (PGG) (KHP), 2023 WL 2609358, at *12 (S.D.N.Y. Mar. 23, 2023) (awarding $425 per hour). The Firm was awarded its requested rate of $550 per hour for A. Cuddy in only one case from 2022, *Y.G. v. New York City Dep't of Educ.*, No. 21 Civ. 641 (AKH), 2022 WL 1046465 (S.D.N.Y. Apr. 7, 2022). The award of relatively higher hourly rates in *Y.G.* was premised in part on the fact that the underlying administrative proceeding was "heavily contested and required the skill of an experienced IDEA litigator to prevail, as there were multiple days of hearings and five hearings on the merits." *Id* at *2. Here, the underlying proceeding involved only one hearing on the merits. The undisputed evidence also indicates that the underlying administrative proceedings in this matter were not as heavily contested as the proceedings in *Y.G.*, as the parties had already reached a partial resolution agreement prior to the hearing. *See H.A.,* 2022 WL 580772, at *8 (finding that the underlying litigation was relatively straightforward since the DOE only objected to one aspect of the Firm's remedial plan and did not contest liability).

M. Cuddy, who has represented parents in hundreds of IDEA cases with the Firm since 2009 (Doc. 25 at 7), has received similar hourly rates to his brother in recent cases. *See, e.g.*, *M.B. v. New York City Dep't of Educ.*, 22-CV-06405 (JPC)(SN), 2024 WL 1435330, at *5 (S.D.N.Y. Jan 24, 2024) (awarding $380 per hour); *L.M. v. New York City Dep't of Educ.*, 21-CV-11175 (AT) (BCM), 2023 WL 2872707, at *7 (S.D.N.Y. Feb. 14, 2023) (awarding $400 per hour).

For other individuals at the Firm, decisions from the past two years contain a range of reasonable hourly rates for midlevel and junior associates between $225 and $325. *See, e.g.*, *H.W. v. New York City Dep't of Educ.*, No. 1:21-cv-08604 (JLR), 2023 WL 5529932, at *9 (S.D.N.Y. Mar. 23, 2023) (awarding junior associate Britton Bouchard $225 per hour); *V.W.*, 2023 WL 2609358, at *9 (S.D.N.Y. Mar. 23, 2023)

7

(awarding midlevel associates Kevin Mendillo and Justin Coretti $325 per hour).  Paralegals, depending on their level of experience, have generally received an hourly rate between $100 and $125.  *See, e.g.*, *H.W.*, 2023 WL 5529932, at *9 (awarding paralegals Allyson Green, Cailin O'Donnell and ChinaAnn Reeve hourly rates of $100 and awarding senior paralegal Shobna Cuddy an hourly rate of $125); *L.J. v. New York City Dep't of Educ.*, 20 Civ. 10672 (KPF), 2023 WL 5747465, at *9 (S.D.N.Y. Sept. 6, 2023) (same).

The Court is mindful that "a reasonable hourly rate is not [solely] ascertained simply by reference to rates awarded in prior cases." *Farbotko*, 433 F.3d at 208 (internal quotation marks and citations omitted).  Rather, the rate must by determined with reference to "similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 210.  The Court notes that there is a significant body of IDEA fee cases involving this Firm specifically—generally involving the same attorneys.  Plaintiff and the Firm point out that the fact that attorneys from the Firm have been awarded similar awards over multiple years suggests that fee awards have not kept pace with inflation.  Doc. 25 at 13.  The Firm argues that this alleged stagnation creates a disincentive for attorneys to engage in fee-shifting work like IDEA litigation.  *Id.*  However, numerous decisions regarding the Firm's rates have been issued in recent months and thoroughly analyze trends in legal fees.  *See Y.S. v. New York City Dep't of Educ.*, 21-cv-10963 (AS), 2024 WL 1759218, at *1 (S.D.N.Y. Apr. 24, 2024) (collecting cases).

The Court has evaluated the evidence proffered by the parties, including declarations from ten non-Firm attorneys purportedly demonstrating the appropriateness of the Firm's requested rates (Doc. 24-1), but it was less instructive than the similar cases in determining an appropriate award.[5]  The Firm submits among its sources:  the 2022 Real Rate Report ("RRR") published by Wolters Kluwer (Docs. 24-3; 24-6);

---

[5] This was also the case in *B.C. v. Dep't of Educ.*, where this Court explained in a footnote the limited value of declarations from non-Firm attorneys. *See* 21 Civ. 2840 (ER), 2022 WL 3214374, at *6 n.2 (S.D.N.Y. Aug. 9, 2022).

the *Laffey* Matrix, a schedule for calculating rates in fee-shifting litigation that originated in the case *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983) (Doc. 24-8); the 50th Annual Survey of Law Firm Economics ("ASLFE") nationwide Partner/Shareholder rates (Doc. 24-4); and the National Association of Legal Fee Analysis' December 2022 Litigation Hourly Rate Survey & Report ("NALFA Report") (Doc. 24-5). The Firm relied on these same sources earlier this year in *D.S.*, prompting Judge Tarnofsky to explain, "this Court has previously found each of these sources to be 'problematic' and has declined to award substantial weight to any of them in determining reasonable hourly rates in IDEA cases." 2024 WL 2159785, at *6 (citing *J.G. v. New York City Dep't of Educ.*, No. 23-CV-959 (PAE), 2024 WL 728626, at *6–7 (S.D.N.Y. Feb. 22, 2024)). The Firm also submits responses from the artificial intelligence tool "ChatGPT" that purport to show that the Firm's requested rates are reasonable market rates for IDEA litigation in the New York City area. Doc 22-1. Judge Tarnofsky declined to credit this evidence in *D.S.* because ChatGPT has been shown to be an unreliable resource. *See* 2024 WL 2159785, at *6; *see also J.G.*, 2024 WL 728626, at *7 (rejecting the Firm's reliance on ChatGPT and advising the firm to remove references to ChatGPT from future fee applications). Nevertheless, the Firm persists in recycling unsuccessful arguments in pursuit of its desired rates.

In addition, the Firm submitted retainer agreements with a number of other Firm clients, which allegedly demonstrate that reasonable clients are willing to pay the Firm's requested hourly rates. Doc. 24-11. While some of these retainers cover IDEA-related due process hearings, they do not indicate the novelty and difficulty of the questions raised, the level of skill required, any relevant time limitations imposed by the client, or the results obtained in those cases. Plaintiff did, however, submit other materials that detail the experience, credentials, and typical hourly rates of Firm attorneys. For example, she submitted declarations from A. Cuddy attesting to his own extensive experience, as

9

well as the unique skill and expertise of the Firm's staff. Doc. 24. Mendillo also submitted a similar declaration. Doc. 23.

After reviewing these materials, considering the *Johnson* factors, and looking to similar recent judicial decisions within this District, the Court is compelled to settle on a fee award in between both parties' requests. While several of the *Johnson* factors weigh in the Firm's favor, other factors do not. Here, the results of the administrative proceeding were clearly favorable to Plaintiff, which "further argue[s] for a fee higher than that proposed by" the DOE. *K.O.*, 2022 WL 1689760, at *10. The Firm took on the case on a contingency basis and therefore was not guaranteed any payment. On the other hand, as in *K.O.*, "the questions presented were not particularly novel or complex." *Id.* As the first section of this opinion makes clear, the Firm has been involved in dozens of similar cases. Although the DOE failed to timely appoint an IHO, it ultimately did not object to many of Plaintiff's requests, did not call any witnesses, and did not dispute that Z.H. had been denied a FAPE. The Court's determination of hourly rates is in line with the *Johnson* factors, which reflect that level of work, and in line with the hourly rates handed down by other Courts in this District.

The Court will award A. Cuddy and M. Cuddy a rate of $400 per hour. A. Cuddy has practiced for over 20 years in the field of special education law and is the founder and principal of the firm, which has offices in several different cities. Doc. 24 ¶ 16. His brother, M. Cuddy, has represented parents in IDEA cases with the firm since 2009. *Id.* ¶ 17. Their level of expertise justifies this rate.

The Court will award Mendillo an hourly rate of $310. Courts in 2024 have awarded Mendillo between $300 and $310. *See, e.g.*, *F.N.*, 2024 WL 1348637, at *8 (awarding $300 per hour); *T.P. v. New York City Dep't of Educ.*, 22 Civ. 9413 (PAE), 2024 WL 986587, at *7 (S.D.N.Y. Mar. 7, 2024) (awarding $310 per hour). Mendillo has practiced in the area of special education law for about a decade and has litigated approximately 100 administrative hearings and nearly 60 federal fee cases, a level of

10

experience that justifies this rate. *See* Doc. 24 ¶ 20. Courts have awarded similar rates to Coretti, another mid-level associate who began work at the Firm in 2016. *See, e.g.*, *D.S.*, 2024 WL 2159785, at *7 (awarding $300 per hour). Given that Coretti has less litigation experience than Mendillo, the Court will award him a rate of $300 per hour.

The Court will award Bush an hourly rate of $275. Bush graduated from law school in 2015 and joined the firm in 2016. Doc. 24 ¶ 21. As in *D.S.*, his sole contribution to this case was an hour and a half spent drafting the federal complaint. *See* Doc. 24-20 at 1–2; 2024 WL 2159785, at *11. The court in *D.S.* awarded Bush $275 per hour, a rate this Court finds reasonable given his level of experience and role in the litigation. *See* 2024 WL 2159785, at *8.

The Court will award an hourly rate of $225 to Britton Bouchard and J. Cuddy, junior associates who were lead attorneys on the administrative hearing. Doc. 25 at 2–3, 7–8. Courts in this District generally charge around $225 an hour for attorneys with three or fewer years of experience. *See H.W.*, 2023 WL 5529932, at *9; *R.P. v. New York City Dep't of Educ.*, 21-CV-4054 (JMF), 2022 WL 1239860, at *4 (S.D.N.Y. Apr. 27, 2022) (collecting cases). As Bouchard had roughly two years of experience when he was working on the administrative hearing (Doc. 24 ¶ 19), the Court finds a rate of $225 per hour appropriate. The Firm's moving papers indicate that J. Cuddy started at the Firm as a paralegal in 2017, but they do not indicate when he started as a lawyer. *See* Doc. 24 ¶ 18; 25 at 8. Given his seemingly comparable experience and role to Bouchard's, the Court likewise finds a rate of $225 appropriate for J. Cuddy.

The court will award senior paralegal Shobna Cuddy an hourly rate of $125 and all other paralegals an hourly rate of $100. These rates are consistent with the hourly rates broadly recognized in this District. *See H.W.*, 2023 WL 5529932, at *9; *L.J.*, 2023 WL 5747465, at *9.

As these rates are close to what the DOE has requested, the Court declines to address the DOE's suggestion that the Court apply hourly rates based on the Northern

11

District where the Firm is located. *See* Doc. 34 at 4 n.6; *Y.S.*, 2024 WL 1759218, at *1 (similarly declining to consider this argument in light of alternative rate reductions).

### B. Reasonable Hours

The Court may reduce the number of hours for which recovery is granted if it finds it cannot credit the prevailing party's "representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). Here, as in *B.C.*, the Firm's billed hours are greater than what the Court would expect an attorney to reasonably spend on this case. *See* 2022 WL 3214374, at *8. Comparable firms bill fewer hours and lower rates for nearly identical IDEA litigation. *See* Doc. 33 at 6.

First, as noted by the DOE, the Firm's "moving papers submitted here are nearly identical to the papers submitted in multiple recently briefed [Firm] matters." Doc. 34 at 18. For example, the Firm billed an hour and a half by Bush to draft the five-page federal complaint that contains a preliminary statement with Z.H.'s educational history, boilerplate law, and formatting identical to at least two other complaints filed by the Firm on November 2, 2022 and August 18, 2022. Docs. 24-20; 34 at 20. The DOE also complains that the Firm over-billed for drafting simple, boilerplate motions; lengthy memoranda of law that appear near-identical to those previously filed; and declarations and affirmations that consist largely of copy-and-pasted, boilerplate language. Doc. 34 at 20–21. The DOE asserts, and courts in this District have agreed, that these tasks could have been completed in less time. *See, e.g.*, *T.P.* 2024 WL 986587, at *11 (stating paralegal could have produced complaint in less than 1.1 hours by copying and pasting); *J.G.*, 2024 WL 728626, at *11 (explaining it should not have taken experienced IDEA lawyer 11 hours to draft 17-page brief consisting largely of facts from due process complaint). Many of these moving papers feature arguments and attached exhibits that have already been rejected by courts of this District. *See, e.g.*, *J.G.*, 2024 WL 728626, at *13 (citing the Firm's reuse of the Real Rate Report, ASLFE, NALFA, and *Laffey* Matrix as ground

12

for pruning the firm's claimed hours); *see generally H.C.*, 71 F.4th 120 (broadly affirming district courts' discretion to reduce the Firm's fee awards in spite of the Firm's same justifications).

The Firm also overbilled in its preparation for the IHO hearing. For example, the firm billed 13.2 hours to draft the due process complaint, although it was only six pages long. Doc. 34 at 23–24. The Firm argues that a due process complaint is more complicated than a garden variety complaint filed in civil litigation (Doc. 25 at 21), but courts in this District have found this argument unpersuasive. *See, e.g.*, *Y.S.*, 2024 WL 1759218, at *1 (finding excessive fifteen hours spent drafting, editing, discussing, and collecting information for similar due process complaint). The Firm billed 69.5 attorney hours and 17.9 paralegal hours in connection with the hearing, which lasted only 24 minutes. While the Court appreciates that diligent preparation is obviously vital when attending to a hearing—and that a short hearing does not always translate to a simple hearing—it finds that the proportion of time billed to the client to time spent in the hearing is high. *See* Doc. 25 at 22. For a contested hearing, courts in this District have reasoned that roughly six hours of preparation for every one hour of hearings is appropriate. *See C.B. v. New York City Dep't of Educ.*, No. 18 Civ. 7337 (CM), 2019 WL 3162177, at *10–11 (S.D.N.Y. July 2, 2019) (reducing hours billed by 15% in order to reach aforementioned ratio); *c.f. Y.G.*, 2022 WL 1046465, at *3 (reasoning that "a ratio of 20 preparation hours to 8 hours of hearing time is well within a reasonable range"). The Firm's attorneys together spent well more than twelve hours preparing for the hearing, which was uncontested in significant part. Although the Firm could not have necessarily foreseen that the DOE would not defend its case, the Firm's billing records and memoranda in support of its fees do not explain why it was necessary to devote so much time to preparation which consisted largely

13

of reviewing Individualized Education Programs, report cards, and evaluations.[6] Doc. 25 at 2; *see T.P.*, 2024 WL 986587, at *9 ("Absent a non-conclusory explanation, a 'preparation-to-proceeding' ratio of nearly 10:1 is unreasonably high."). The same is true when it comes to hours billed for administrative tasks, including the five hours billed to produce the 36-page administrative billing statement. Doc. 34 at 25. Again, while it is certainly incumbent upon the Firm to ensure that its billing statement is accurate, there is no compelling reason for this task to take five hours. *See R.G. v. New York City Dep't of Educ.*, 18-CV-6851 (VEC), 2019 WL 4735050, at *4 (S.D.N.Y. Sept, 26, 2019) (reducing the time billed reviewing a billing statement from 2.8 to 1.5 hours because the "DOE should not have to compensate Plaintiff's counsel for administrative clean-up of their own entries"). Moreover, the DOE points out that in preparing for the underlying hearing and the federal action, the Firm excessively billed 0.1 hours (six minutes) for administrative tasks that should have taken no more than a few moments. Doc. 34 at 22. "A reasonable paying client would expect a timekeeper to consolidate such tasks into a single time entry, rather than paying for a series of 0.1-hour time entries." *T.P.*, 2024 WL 986587, at *10.

While the Court finds that the Firm over-billed in the particular ways described above, the Court is not persuaded by the DOE's suggestion that it cut the Firm's billed hours by 50% for the administrative hearing and by 80% for the federal action by extrapolating excessive billing practices across the entirety of the representation. Doc. 34 at 16–19. "Rather than engage in a painstaking line-item review of each billing entry, in calculating an appropriate reduction of compensable hours '[a] district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a

---

[6] The Firm argues that the DOE's delay in appointing an IHO prolonged the proceedings and created more work for the Firm by requiring it to file an additional complaint. Doc. 25 at 3. The Court recognizes that this oversight by the DOE added to the total hours billed for the administrative hearing. However, it did not change the nature of the work done and therefore does not affect the Court's percentage reduction.

fee application.'" *M.D. v. New York City Dep't of Educ.*, 17-CV-2417 (JMF), 2018 WL 4386086, at *4 (S.D.N.Y. Sept. 14, 2018) (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006)). Courts in this District have applied this strategy numerous times in cases involving the Firm's IDEA litigation.

Southern District courts in 2023 and 2024 have generally reduced the hours the firm has spent litigating the underlying administrative action by between 15 and 25 percent depending on the complexity of the questions at issue. *See, e.g.*, *M.B.*, 2024 WL 1435330, at *8 (ordering 15% reduction); *F.N.*, 2024 WL 1348637, at *11 (ordering 20% reduction); *T.P.*, 2024 WL 986587, at *10 (ordering 25% reduction). For the duplicative billing habits described above, the court concludes a 20% reduction is reasonable in this case.

Southern District courts in 2023 and 2024 have tended to reduce the hours the firm has spent litigating attorney attorneys' fees in the administrative action by slightly larger percentages given the formulaic (and, in the Firm's case, repetitive) nature of the work. "Where a court determines that attorneys have spent excessive time on relatively straightforward legal tasks, it is appropriate to reduce the award by a significant percentage." *B.C.*, 2022 WL 3214374, at *9. Southern District courts in 2023 and 2024 have cut the Firm's hours spent on the federal action by 10 to 40 percent, with 25% being the most common reduction. *See F.N.*, 2024 WL 1348637, at *12 (ordering reduction of 25%); *T.P.*, 2024 WL 986587, at *11 (same); *H.W.*, 2023 WL 5529932, at *12 (same). In light of the straightforward nature of this federal action, the Court concludes that a 25% reduction is reasonable. These reductions are considerable and reflect the Court's view that some of the hours billed by the Firm were excessive.

### C. Costs

"A district court may award reasonable costs to the prevailing party in IDEA cases." *C.D. v. Minisink Valley Dep't of Educ.*, 17 Civ. 7632 (PAE), 2018 WL 3769972,

15

at *12 (S.D.N.Y. Aug. 9, 2018) (citing 20 U.S.C. § 1415(i)(3)(B)(i)(I)). The Firm requests compensation for costs totaling $605.26. This includes $402 for filing this lawsuit, $11.76 for postage, and $191.50 for printing. Docs. 24-19; 24-20. The amounts requested fall within the scope of what previous courts have determined to be compensable. *See, e.g.*, *S.F. v. New York City Dep't of Educ.*, No. 21-CV-11147 (PAE), 2023 WL 4531187, at *12 (S.D.N.Y. July 13, 2023) (finding $402 filing fee and $262.12 in administrative costs reasonable). Because the DOE has not objected to these costs, the Court will award them to the Firm. *See H.W. v New York City Dep't of Educ.*, 2023 WL 5529932, at *13 (awarding undisputed costs for filing and parking).

    **D.**    **Fee Cap**

Under the IDEA, courts may "cap" a fee award to those incurred before a rejected settlement offer that would have been more favorable than the relief finally obtained. *See* 20 U.S.C. § 1415(i)(3)(D)(i). Applying the Court's reductions, the Firm had properly billed approximately $17,139.23 by October 3, 2023, when the DOE made its settlement offer of $20,001.00. Because that figure is below the DOE's unaccepted settlement offer, the Court must apply the statutory cap. *See, e.g.*, *R.P.*, 2022 WL 1239860, at *6 ("no fees should be awarded for costs or work performed after July 7, 2021, when the DOE made a written offer of settlement," because total fees and costs to which the Firm was entitled as of that date was lower than DOE's settlement offer).

**IV.**    **CONCLUSION**

The Court grants Plaintiff's motion for attorneys' fees and costs with the modifications to hourly rates and billable hours detailed above. Thus, for the underlying administrative proceedings, the hours and rates for each attorney and paralegal result in the following fees:

| Name | Rate | Hours | Total |
|---|---|---|---|
| Andrew Cuddy, Esq. | $400 | 3.68 | $1,472 |

| Name | Rate | Hours | Total |
|---|---|---|---|
| Britton Bouchard, Esq. | $225 | 27.84 | $6,264 |
| Justin Coretti, Esq. | $300 | 8.08 | $2,424 |
| John Cuddy, Esq. | $225 | 14.24 | $3,204 |
| Kevin Mendillo, Esq. | $310 | 0.96 | $297.60 |
| Michael Cuddy, Esq. | $400 | 0.8 | $320 |
| Allyson Green | $100 | 4.56 | $456 |
| Cailin O'Donnell | $100 | 7.28 | $728 |
| ChinaAnn Reeve | $100 | 4.96 | $496 |
| Shobna Cuddy | $125 | 2.56 | $320 |

The hours and rates for each attorney and paralegal in connection with this federal action result in the following fees through October 3, 2023:

| Name | Rate | Hours | Total |
|---|---|---|---|
| Andrew Cuddy, Esq. | $400 | 0.15 | $60 |
| Kenneth Bush, Esq. | $275 | 1.125 | $309.38 |
| Kevin Mendillo, Esq. | $310 | 2.325 | $720.75 |
| Kevin Mendillo (paralegal) | $100 | 0.3 | $30 |
| Shobna Cuddy | $125 | 0.3 | $37.50 |

Therefore, Plaintiff is due $15,981.60 for the underlying administrative action and $1,157.63 for the federal action. As stated above, the firm may bill $605.26 in costs. Accordingly, Plaintiff is entitled to a combined total of $17,744.49. The court finds that this reduction affords the "rough justice" that is the "essential goal in shifting fees." *Y.S.*,

17

2024 WL 1759218, at *2.  The Clerk of Court is respectfully directed to enter judgment as described above and close the case.

It is SO ORDERED.

Dated:    July 12, 2024
             New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

18